STATE OF NEBRASKA, APPELLEE, V. CHARLES JESS PALMER,
ALSO KNOWN AS CHARLES TINSLEY,
ALSO KNOWN AS J.R. KIRKPATRICK, APPELLANT.

600 N.W. 2d 756

Filed September 24, 1999. No. S-95-1293.

Gerard A. Piccolo, Hall County Public Defender, and Robert Lindemeier, Lincoln County Public Defender, for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and MUES, Judge.

WRIGHT, J.

## I. STATEMENT OF CASE

Charles Jess Palmer (Palmer) has been tried and convicted three times for the crime of felony murder, and he has been sentenced to death after each conviction. The convictions and sentences from the first two trials have been reversed. See, *State v. Palmer*, 210 Neb. 206, 313 N.W.2d 648 (1981) (*Palmer I*); *State v. Palmer*, 215 Neb. 273, 338 N.W.2d 281 (1983) (*Palmer II*). The third conviction and sentence were affirmed by this court in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986) (*Palmer III*). Palmer brought this postconviction action pursuant to Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995), requesting that his conviction and death sentence be vacated and set aside.

## II. SCOPE OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Dandridge*, 255 Neb. 364, 585 N.W.2d 433 (1998).

## III. FACTS

### 1. Background

The victim, Eugene Zimmerman (Zimmerman), operated a coin shop in his home in Grand Island, Nebraska. Palmer and his wife, Cherie Palmer, first contacted Zimmerman in October 1978 for the purpose of selling coins and silver objects to him. On March 6, 1979, the Palmers arrived at Zimmerman's house between 3 and 3:30 p.m. Zimmerman told the Palmers that he would buy certain rings from them if a test proved that the rings were in fact gold. According to Cherie Palmer, as Zimmerman rose from his desk and turned around, Palmer lunged at Zimmerman and struck him on the side of the head. The two men struggled, and Zimmerman was thrown to the floor. Palmer then demanded money.

At the time, Palmer was 40 years old, stood 6 feet 7 inches tall, and weighed approximately 245 pounds. Zimmerman was 59 years old, stood 5 feet 11 inches tall, and weighed approximately 135 pounds. Palmer bound Zimmerman's hands, lifted him to his feet, and forced him upstairs. Palmer remained alone with Zimmerman for a few minutes before Cherie Palmer went upstairs. Upon entering the bedroom, Cherie Palmer saw Zimmerman lying on the bed, his hands and feet bound. Palmer told his wife to watch Zimmerman while he searched the upstairs. Palmer then went downstairs and remained there for about 20 minutes. During that time, Zimmerman complained to Cherie Palmer of stomach pain and asked, "[W]hy are you doing this to me[?]" Zimmerman then asked Cherie Palmer to get him some medicine from the bathroom, which she did.

Palmer went back upstairs wearing gloves and sent Cherie Palmer downstairs, where she waited for 15 minutes. She stated that during this time, she heard noises: "There was a — a lot of thumping noises. Thump, thump, thump, thump, and there was some kind of a — a guttural noise. I kept hearing a — a low, monotonous, almost a chant-like sound. A very deep and very throaty guttural type over and over, again." Palmer returned downstairs around 4:30 p.m., and the Palmers left approximately 1 hour after they arrived at Zimmerman's residence.

Zimmerman's body was discovered by his wife, Monica Zimmerman, when she returned home around 5 p.m. on March 6, 1979. Zimmerman had an electrical cord tied tightly around his neck. His windpipe and voice box were broken, and his face was bruised and cut. The cause of death was determined to be strangulation, and the time of death was fixed at 4:30 p.m.

About 2 weeks after Zimmerman's death, the Palmers left Nebraska for Austin, Texas. Cherie Palmer testified that the items stolen from the coin shop were taken with them to Texas. In Texas, Palmer, using the name "J.R. Kirkpatrick," contacted a coin dealer named "Jesse Garza" and sold him coins and jewelry. A few days later, Garza read a trade journal which covered Zimmerman's robbery and murder, and cataloged the stolen items. Garza recognized several of the items he had purchased from Palmer, and he called the police.

Following Palmer's third trial and conviction, the sentencing panel found that no mitigating circumstances existed which would affect Palmer's sentence and found beyond a reasonable doubt that two statutory aggravating circumstances existed: (1) The murder was committed in an apparent effort to conceal Palmer's identity as the perpetrator of the robbery and (2) while the murder was not especially heinous, atrocious, or cruel, it manifested exceptional depravity by ordinary standards of morality and intelligence. See Neb. Rev. Stat. § 29-2523(1)(b) and (d) (Reissue 1995).

### 2. PALMER I

Prior to his first trial, Palmer filed a motion to suppress the items seized from his person at the time of his arrest. He also filed a motion and an amended motion in limine to suppress all testimony from Monica Zimmerman, Deanna Klintworth, and Jim Mracek, upon the ground that the testimony was obtained by the State under hypnosis at a pretrial hypnotic interview. The trial court denied the motions, but the court excluded any testimony by the three witnesses which was given while under hypnosis. The trial court's rulings on these motions constituted the basic assignments of error asserted by Palmer on appeal. We held that the testimony of the three witnesses concerning the subject matter adduced at their respective pretrial hypnotic

interviews was inadmissible and was clearly prejudicial, and we reversed the judgment of conviction and remanded the cause for a new trial.

### 3. *PALMER II*

Palmer was retried, convicted, and again sentenced to death. In *Palmer II*, we did not consider all 26 of the errors Palmer alleged, because we determined that Cherie Palmer was still Palmer's wife on June 8, 1982, when she testified against Palmer and that the trial court committed prejudicial error in permitting her to so testify in violation of Neb. Rev. Stat. § 27-505(2) (Reissue 1979). We again reversed the judgment of conviction and remanded the cause for a new trial.

### 4. *PALMER III*

Following our opinion in *Palmer II*, but before the third trial, § 27-505 was amended so that in criminal cases involving crimes of violence, one spouse could testify against another. See 1984 Neb. Laws, L.B. 696. In *Palmer III*, we concluded, inter alia, that the amendment of § 27-505 did not create an ex post facto law and that the State's decision to try Palmer a third time did not violate the Double Jeopardy Clause of the state and federal Constitutions. We also found that the victim was murdered in an effort to conceal Palmer's identity, that the murder " 'manifested exceptional depravity,' " *Palmer III*, 224 Neb. at 287, 399 N.W.2d at 713, and that the aggravating circumstances were established beyond a reasonable doubt.

We held that exceptional depravity is present when it is shown beyond a reasonable doubt that the following circumstances, either separately or collectively, exist in reference to a first degree murder: (1) apparent relishing of the murder by the killer, (2) infliction of gratuitous violence on the victim, (3) needless mutilation of the victim, (4) senselessness of the crime, or (5) helplessness of the victim. We stated that where one or more of these five factors are present, there may be a finding of exceptional depravity. We found that in Palmer's case the sentence of death was neither excessive nor disproportionate to the penalty imposed in earlier cases, and we affirmed the judgment of conviction and sentence of death. After reviewing Palmer's

assigned errors, we found that the evidence against Palmer was more than sufficient to justify the case being submitted to the jury and to find Palmer guilty of felony murder.

### 5. FEDERAL APPEALS

During the pendency of his various appeals in state courts, Palmer also sought habeas corpus relief in the federal courts. After our reversal in *Palmer II*, but before the third trial, Palmer filed a petition for writ of habeas corpus in the U.S. District Court for the District of Nebraska (District Court). The petition asserted that Palmer's second trial had subjected him to double jeopardy and that his third trial would also subject him to double jeopardy because the properly admitted evidence in Palmer's first two trials—the evidence that remained after the erroneously admitted evidence obtained by hypnosis had been thrown out— was legally insufficient to convict him. The District Court dismissed Palmer's petition as premature, finding that Palmer had not exhausted his state remedies because he could either petition this court before his third trial or pursue other avenues of relief if convicted. See *Palmer v. Drum*, No. CV84-L-144 (D. Neb. Mar. 1, 1984).

Palmer appealed the dismissal of his habeas petition to the U.S. Court of Appeals for the Eighth Circuit (Court of Appeals), which remanded the cause to the District Court for further consideration. See *Palmer v. Drum*, No. 84-8041 (8th Cir. May 10, 1984). On remand, the District Court dismissed Palmer's claim as meritless, ruling that the Double Jeopardy Clause is not violated by a retrial where a conviction is reversed based on errors in admission of evidence rather than on the basis that the evidence was insufficient to convict. The District Court also denied Palmer's motion to amend his petition to set forth in greater clarity his double jeopardy claims and the bases thereof. After rejecting Palmer's request that the District Court determine the sufficiency of the remaining evidence admitted during his second trial, the Court of Appeals stated: " 'In light of the nature of the claim asserted and the restrictive nature of the double jeopardy clause, I fail to perceive how the petition could be amended to state a nonfrivolous double jeopardy claim. . . . Therefore, the motion for leave to amend the petition will be denied.' " *Palmer*

*v. Grammer*, 863 F.2d 588, 590 (8th Cir. 1988), quoting *Palmer v. Grammer*, No. CV84-L-144, slip op. (D. Neb. May 22, 1984).

Palmer appealed the dismissal of this petition to the Court of Appeals, which held the matter in abeyance pending resolution of all proceedings in the Nebraska state courts. See *Palmer v. Drum*, No. 84-1689 (8th Cir. June 8, 1984). After we affirmed Palmer's conviction and death sentence in *Palmer III*, Palmer's habeas appeal was decided by the Court of Appeals. See *Palmer v. Grammer, supra*. The Court of Appeals affirmed the District Court's decision that the habeas petition lacked merit, but granted Palmer leave to amend his petition. *Id*.

On March 9, 1989, Palmer filed his amended habeas petition in the District Court, asserting that his imprisonment before the third trial violated the Double Jeopardy Clause and denied Palmer due process. He contended that the totality of the evidence at each of his first two trials was insufficient to convict him and that the District Court should not consider Cherie Palmer's testimony when reviewing the sufficiency of the evidence at his second trial because the testimony was obtained through judicial and prosecutorial misconduct. Palmer contended that the prosecutor and the judge knew that Cherie Palmer's testimony was inadmissible, but offered it anyway, knowing that Palmer could be retried if this conviction was reversed based upon admission of Cherie Palmer's testimony.

A magistrate judge originally granted Palmer's request to depose both the prosecutor and the trial judge who had presided at Palmer's second trial. After the State sought a protective order, the magistrate judge canceled the depositions and declined to consider Palmer's misconduct argument because the magistrate judge believed it was beyond the Court of Appeals' remand order and thus was not properly before the District Court. In reviewing all the evidence in each of the first two trials, including the improperly admitted evidence, the magistrate judge concluded that sufficient evidence supported Palmer's first two convictions. The District Court adopted the magistrate judge's recommendation and denied Palmer's petition.

Palmer appealed, and the Court of Appeals found that although a jury convicted Palmer a third time while his habeas petition was pending, his pretrial double jeopardy challenge to

his third trial was not moot, and that Palmer could raise constitutional challenges to his third conviction and sentence in a later habeas petition. See *Palmer v. Clarke*, 961 F.2d 771 (8th Cir. 1992). The Court of Appeals noted that the District Court had not considered whether it should exclude Cherie Palmer's testimony based on Palmer's misconduct claim because the District Court believed it was beyond the scope of the Court of Appeals' order on remand. The Court of Appeals found, however, that because Palmer's misconduct claim was a part of his sufficiency of the evidence argument, the District Court should consider it. The determination of the sufficiency of the evidence at Palmer's second trial was remanded to the District Court. The conclusion by the District Court that the evidence at the first trial was sufficient to convict Palmer and the dismissal of Palmer's double jeopardy challenge to his second trial were affirmed by the Court of Appeals. The Court of Appeals therefore remanded Palmer's double jeopardy challenge to his third trial.

Upon remand, after conducting an evidentiary hearing, the District Court found there was no misconduct by the prosecutor or the trial judge because neither the prosecutor nor the judge knew that the testimony of Cherie Palmer was inadmissible. The District Court concluded that the testimony of Cherie Palmer should be considered when reviewing the sufficiency of the evidence at Palmer's second trial and that the evidence was sufficient to support Palmer's second conviction. The District Court found that Palmer's third trial did not violate the Double Jeopardy Clause, and the Court of Appeals affirmed. See *Palmer v. Clarke*, 12 F.3d 781 (8th Cir. 1993).

Subsequently, Palmer filed a motion for postconviction relief in the Hall County District Court, which denied his request for relief. Palmer then timely filed this appeal.

## IV. ASSIGNMENTS OF ERROR

Palmer makes the following assignments of error, which we have renumbered and restated: (1) The lower court erred by not engaging in a comparative review analysis and erred in not finding Palmer's sentence to be disproportionate; (2) the lower court erred in not finding Palmer's sentence to be arbitrary and capricious; (3) the lower court erred in finding the Nebraska death

penalty statutes to be constitutional as applied; (4) the lower court erred in not granting postconviction relief based on a violation of the ex post facto provisions of the U.S. and Nebraska Constitutions; (5) the lower court erred in not granting postconviction relief based on the trial court's not giving a lesser-included offense instruction on manslaughter and second degree murder; (6) the lower court erred in not granting postconviction relief based on the unconstitutional and/or illegal arrest of Palmer in Texas; (7) the lower court erred in holding that the presentence investigation used in Palmer's case was sufficient to justify imposition of the death penalty; (8) the lower court erred in not granting postconviction relief based on a violation of the bill of attainder provision in the U.S. and Nebraska Constitutions; (9) the lower court erred in not granting postconviction relief because Nebraska's felony murder statute is unconstitutional; (10) the lower court erred in not granting postconviction relief based on a jury instruction given in Palmer's third trial which confused and misled the jury; (11) the lower court erred in not finding the "exceptional depravity" language in § 29-2523(1)(d) to be unconstitutional and in holding that regardless of the exceptional depravity language, the death penalty was appropriate because the trial court found a § 29-2523(1)(b) aggravating circumstance to support the death penalty; (12) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel because his counsel performed an incomplete investigation of the aggravating and mitigating circumstances; (13) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel because his counsel gave inadequate appellate argument concerning the ex post facto issue; (14) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel because his counsel gave inadequate appellate argument concerning the bill of attainder issue; (15) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel because his trial counsel failed to challenge the sufficiency of the information; (16) the lower court erred in not granting

postconviction relief on the basis that Palmer received ineffective assistance of counsel in the sentencing phase of his first trial because his counsel did not object to the use of Cherie Palmer's testimony at sentencing on the ground that it was privileged; (17) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel in his first appeal because his counsel did not raise the improper use of Cherie Palmer's statement at sentencing; (18) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel in the sentencing phase of his first trial because his counsel conceded the existence of aggravating circumstance (1)(b); (19) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel because of the failure of his appellate counsel in his first appeal to argue sufficiency of the evidence once the hypnotic evidence was excluded; (20) the lower court erred in not granting postconviction relief on the basis that Palmer received ineffective assistance of counsel because his trial counsel in his second trial failed to file a plea in bar; and (21) the lower court erred in not granting postconviction relief on the theory that the information in Palmer's third trial was defective.

## V. ANALYSIS

With the factual and procedural background set forth, we now consider Palmer's assignments of error. These assignments can be divided into four categories and will be addressed accordingly: (1) errors previously addressed by this court, (2) errors procedurally defaulted by Palmer, (3) errors Palmer requests this court to address as plain error, and (4) errors not addressed previously by this court and not procedurally defaulted by Palmer.

### 1. ERRORS PREVIOUSLY ADDRESSED BY THIS COURT
### (ASSIGNMENTS OF ERROR NOS. 1 THROUGH 6)

Several of the errors assigned by Palmer were raised and addressed by this court in *Palmer III*. These assignments of error include the following: (1) The lower court erred by not engaging in a comparative review analysis and thereby finding Palmer's sentence to be disproportionate, (2) the lower court

erred in not finding Palmer's sentence to be arbitrary and capricious, (3) the lower court erred in finding the Nebraska death penalty statutes to be constitutional as applied, (4) the lower court erred in not granting postconviction relief based on a violation of the ex post facto provisions of the U.S. and Nebraska Constitutions, (5) the lower court erred in not granting postconviction relief based on the trial court's not giving a lesser-included offense instruction on manslaughter and second degree murder, and (6) the lower court erred in not granting postconviction relief based on the unconstitutional and/or illegal arrest of Palmer in Texas.

■ Palmer requests reconsideration of each of these issues. However, we have clearly established that " '[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.' " *State v. Otey*, 236 Neb. 915, 926, 464 N.W.2d 352, 360 (1991). Therefore, we decline to reconsider these issues, and we do not address assignments of error Nos. 1 through 6.

### 2. ERRORS PROCEDURALLY DEFAULTED BY PALMER
### (ASSIGNMENTS OF ERROR NOS. 7 AND 21)

We also decline to address two assignments of error, as they were not raised in Palmer's direct appeal and are therefore procedurally barred from consideration in a motion for postconviction relief. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995). See, also, *State v. Keithley*, 247 Neb. 638, 529 N.W.2d 541 (1995).

Palmer could have raised each of the following assignments of error in his direct appeal, but he did not: (7) The lower court erred in holding that the presentence investigation report used in Palmer's case was sufficient to justify imposition of the death penalty and (21) the lower court erred in not granting postconviction relief on the theory that the information in Palmer's third trial was defective.

### 3. Errors Palmer Requests This Court
### to Address as Plain Error
### (Assignment of Error No. 10)

Palmer argues that the Hall County District Court erred in not granting postconviction relief based on an allegedly misleading jury instruction given by the trial court in the third trial. During deliberations, the jury sent a note to the judge requesting that he define the term "inference." The judge responded by sending the jury a definition of the term "inference" taken from a dictionary: "An inference is a conclusion drawn from premises or evidence; a deduction." Palmer now claims that this response was confusing because it used the term "premises." Palmer argues that the term " '[p]remise' is defined variously, but the relevant definition includes the concept of an 'assumption' from which reasoning proceeds." Brief for appellant at 23. Palmer insists that this definition of "premise" directly conflicts with another jury instruction which instructed the jury not to speculate or assume anything. Palmer states that these instructions are inconsistent and therefore were confusing or misleading to the jury.

This issue was not raised at Palmer's third trial or on the appeal therefrom. Although such error is procedurally barred, Palmer requests that we review the issue as "plain error." However, Palmer misunderstands our use of plain error review. Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. See, *State v. Williams*, 247 Neb. 878, 530 N.W.2d 904 (1995); *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995).

Palmer's complaint regarding the supplemental jury instruction's use of the term "premises" is not an error plainly evident from the record, if it is error at all. Therefore, we refuse to address this assigned error.

### 4. Errors Not Addressed Previously by This Court
### and Not Procedurally Defaulted by Palmer

We now address assignments of error Nos. 8, 9, and 11 through 20. These assignments of error were raised by Palmer in

his motion for postconviction relief. They were not addressed in *Palmer III*, and they have not been waived by Palmer.

### (a) Felony Murder
### (Assignment of Error No. 9)

Palmer argues that permitting a homicide conviction to be established under a felony murder theory is unconstitutional because it violates the constitutional prohibition against conclusive presumptions in criminal cases. Palmer complains that the felony murder statute permits the prosecution to establish the required element of intent for the homicide by merely proving the intent required to commit the underlying felony. This argument was raised by Palmer in his direct appeal following his third trial. However, *Palmer III* does not clearly reveal whether the court addressed this argument. Therefore, we will address this assignment of error.

As the Hall County District Court held, it is clearly established that a person may be convicted of first degree murder under a felony murder theory without violating his 8th or 14th Amendment rights. See *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986). Therefore, this assignment of error has no merit.

### (b) Bill of Attainder
### (Assignments of Error Nos. 8 and 14)

Palmer argues that Cherie Palmer was permitted to testify against him at his third trial and during sentencing as the result of an unconstitutional bill of attainder and that, therefore, a new trial is warranted. In a related assignment of error, Palmer argues that his counsel in the appeal of his third trial was ineffective in presenting his bill of attainder argument and that, as a result, Palmer was not granted a new trial.

In *Palmer II*, we held that § 27-505 prohibited Cherie Palmer from testifying against him in his second trial. At that time, § 27-505 stated:

(1) Neither husband nor wife can be examined in any case as to any confidential communication made by one to the other while married, nor shall they after the marriage relation ceases to be [be] permitted to reveal in testimony any such communication while the marriage subsisted

except as otherwise provided by law. This privilege may be waived only with the consent of both spouses. After the death of one, it may be waived by the survivor.

(2) During the existence of the marriage, a husband and wife can in no criminal case be a witness against the other. This privilege may be waived only with the consent of both spouses.

(3) These privileges may not be claimed:

(a) In any criminal case where the crime charged is rape, adultery, bigamy, incest . . . .

Following *Palmer II* and before Palmer's third trial, the Nebraska Legislature enacted 1984 Neb. Laws, L.B. 696, which amended § 27-505(3) to read as follows: "These privileges may not be claimed: (a) In any criminal case where the crime charged is a *crime of violence*, bigamy, incest . . . ." (Emphasis supplied.) See § 27-505(3) (Reissue 1995).

The amendment of § 27-505 broadened the category of crimes to which the spousal privilege would not apply to include a "crime of violence." See 1984 Neb. Laws, L.B. 696. Palmer argues that the passage of this amendment between his second and third trials amounts to a legislative bill of attainder against him and that the use of the amended spousal privilege in his third trial to permit Cherie Palmer to testify warrants a new trial. This argument fails.

Article I, § 10, of the U.S. Constitution provides: "No State shall . . . pass any Bill of Attainder . . . ." The bill of attainder provision prohibits trials by a legislature, and it forbids the imposition of punishment by the legislature on specific persons. *United States v. Brown*, 381 U.S. 437, 85 S. Ct. 1707, 14 L. Ed. 2d 484 (1965). A bill of attainder is a legislative act which applies to named individuals or to easily ascertained members of a group in such a way as to inflict punishment on them without a judicial trial. *Id.* The prohibition on such acts proscribes legislation which singles out disfavored persons and carries out summary punishment for past conduct. *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994).

The passage of 1984 Neb. Laws, L.B. 696, and the subsequent use of Cherie Palmer's testimony against Palmer in his

third trial did not amount to a bill of attainder against him. In order for a legislative enactment to be deemed a bill of attainder, it must (1) specify the affected persons, (2) inflict punishment, and (3) lack a judicial trial. *Selective Service v. Minn. Public Int. Res. Gp.*, 468 U.S. 841, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984).

The first prong of bill of attainder analysis provides that for a legislative enactment to be deemed a bill of attainder, it must specify the affected persons. The Legislature's modification of the spousal privilege fails this prong of the analysis.

 Historically, bills of attainder specifically designated persons or groups by name for punishment. See *United States v. Brown, supra.* However, "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party v. Control Board*, 367 U.S. 1, 86, 81 S. Ct. 1357, 6 L. Ed. 2d 625 (1961). "When past activity serves as 'a point of reference for the ascertainment of particular persons ineluctably designated by the legislature' for punishment . . . the Act may be an attainder." *Selective Service*, 468 U.S. at 847.

The change in the § 27-505 spousal privilege did not specify persons to be punished. The privilege, as amended, neither names specific persons or groups to be punished nor isolates past activity by which persons can later be designated as appropriate candidates for punishment. The amended spousal privilege is not concerned with distinguishing between persons, but between crimes. The amendment allowed spousal testimony to be admitted in future trials for violent crimes. Therefore, the amendment of § 27-505 was not a bill of attainder against Palmer. Accordingly, Palmer was not prejudiced by a lack of argument by his appellate counsel on this issue.

### (c) Exceptional Depravity
### (Assignment of Error No. 11)

Palmer argues that he is entitled to a new sentencing hearing because this court found that the exceptional depravity aggravating circumstance in § 29-2523(1)(d) applied to his case.

Palmer points out that the Court of Appeals, in *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), held that the exceptional depravity aggravating circumstance is unconstitutionally vague for purposes of the Eighth Amendment. Palmer therefore argues that his sentence was based on the application of an unconstitutionally vague aggravating circumstance.

However, the Court of Appeals has since stated that the exceptional depravity definition under § 29-2523(1)(d), as we narrowed it in *Palmer III*, is constitutional. See *Joubert v. Hopkins*, 75 F.3d 1232 (8th Cir. 1996). As a result, this argument has no merit.

Palmer suggests that even if our reformulation of the exceptional depravity aggravating circumstance rendered the definition of exceptional depravity constitutional for purposes of the Eighth Amendment, he was not provided notice at the time of his sentencing hearing of the manner in which this court would reformulate the aggravating circumstance. Palmer insists that he was therefore denied his due process rights under the 14th Amendment to notice and an opportunity to be heard on that aggravating circumstance.

In *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), we addressed a similar question. We held that whether a person has sufficient notice of the scope of an aggravating circumstance which may be applied at the sentencing hearing is a two-part consideration. The 14th Amendment notice requirement states that (1) the language of the statute and previous constructions of it in existence at the time of the sentencing hearing must provide reasonable notice to a person of ordinary intelligence of the scope of criminal behavior reached by the aggravating circumstance and (2) any new construction of the aggravating circumstance which occurs after the hearing does not increase the scope of the behavior considered under that particular aggravating circumstance. See, *State v. Moore, supra*, citing *Maynard v. Cartwright*, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964).

At the time of his sentencing hearing, Palmer had notice of the language of § 29-2523(1)(d) and the various fact patterns

that this court described as "clear-cut, specific examples which demonstrate the meaning of the phrase 'exceptional depravity.' " See *Palmer III*, 224 Neb. at 318, 399 N.W.2d at 731. This statutory language and our previous constructions of it were sufficient to place Palmer on notice that these fact patterns would bear on his sentencing. Indeed, as we held in *Palmer III*, a comparison of each of the five factors we adopted from *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), to the facts of Palmer's case could be found in our earlier constructions of the exceptional depravity prong of § 29-2523(1)(d).

Our adoption of the five factors which we applied to the facts of Palmer's case did not increase the scope of behavior that Palmer should have been prepared to address at the sentencing hearing. As noted above, we specifically recognized that each of the factors we adopted was derived from one of the fact patterns in our previous case law applying the exceptional depravity aggravating circumstance. Our rearticulation of those factors in *Palmer III*, then, did not expand the range of behavior which Palmer was prompted to address at the sentencing hearing. Rather, our adoption of the *Gretzler* factors was a more precise articulation of the scope of the exceptional depravity prong of the § 29-2523(1)(d) aggravating circumstance.

Our application of the narrowed definition of the exceptional depravity aggravating circumstance articulated in *Palmer III* to Palmer did not violate his due process rights under the 14th Amendment.

(d) Ineffective Assistance of Counsel
on Appeal From Palmer's Third Trial
(Assignment of Error No. 12)

■ Palmer raises several claims alleging that he was denied effective assistance of counsel.

"[T]o sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable

probability that but for counsel's deficient performance, the result of the proceeding would have been different." *State v. Hunt*, 254 Neb. 865, 869, 580 N.W.2d 110, 113 (1998).

First, Palmer raises specific objections to the manner in which his counsel prepared for the sentencing phase of his third trial: (1) Trial counsel did not do any investigation into the applicability of aggravating circumstance (1)(b) (murder committed to conceal identity of perpetrator of another crime) to Palmer; (2) in general, counsel did not request that the probation officer investigate any aspect of Palmer's case when preparing the presentence investigation report; and (3) counsel failed to interview Cherie Palmer prior to the sentencing hearing, despite the fact that her testimony was used by the sentencing panel to establish the two aggravating circumstances that were the basis for Palmer's death sentence.

The gravamen of these assignments of error is that Palmer's counsel failed to undertake particular investigations and introduce the results of those investigations at Palmer's sentencing. In *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the U.S. Supreme Court stated that a counsel's duty to investigate is the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." " ' "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." ' " *Burger v. Kemp*, 483 U.S. 776, 795, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987) (quoting *Strickland v. Washington, supra*). See, also, *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988).

While Palmer asserts that the failure of his counsel to undertake these investigations is ineffective assistance of counsel, Palmer does not argue how any of these actions by counsel would have made a difference in Palmer's sentencing. In order to establish that one has been denied effective assistance of counsel in violation of the Sixth Amendment, it is not sufficient to show that the defendant's previous counsel was deficient. Palmer must also show that " ' "such deficient performance prejudiced the defense, that is, a demonstration of reasonable prob-

ability that, but for counsel's deficient performance, the result of the proceeding would have been different." ' " See *State v. Dixon*, 237 Neb. 630, 633, 467 N.W.2d 397, 401 (1991).

Palmer and his counsel were aware of the evidence in the case that determined whether aggravating circumstance (1)(b) applied. In addition, Palmer and his counsel were aware prior to the sentencing hearing of the general nature and subject matter of the testimony of Cherie Palmer regarding the applicability of aggravating circumstances (1)(b) and (1)(d). In view of these circumstances, we cannot say that Palmer's counsel's decision not to undertake the particular investigations and interviews was deficient.

Moreover, if a presentencing interview or investigation would have revealed any additional probative information regarding the aggravating and mitigating circumstances applicable to Palmer, he has not argued what such information was or how it would have, with a reasonable probability, altered the outcome of his sentencing. In *State v. Painter, supra*, the defendant argued on postconviction that his counsel had failed to investigate a number of witnesses prior to advising the defendant regarding the plea the defendant should enter. We noted that in raising the allegation, the defendant had not alleged what outcome-altering facts or evidence would likely have been discovered by his counsel had counsel undertaken the various investigations. We held that mere allegations that investigations should have been conducted will not, in and of themselves, establish a basis for postconviction relief.

> [The defendant] bore the burden in these proceedings of setting forth factual allegations that could have been discovered by these independent interviews which would have altered his decision to plead guilty and led him to insist on a trial. [The defendant] has merely set forth a conclusionary allegation that his counsel failed to adequately delve into a "number of inconsistencies between [witnesses]." Nowhere has [the defendant] set forth the substance of these alleged inconsistencies. It is therefore impossible to determine whether there is a reasonable probability that his decision to plead would have been different.

*Painter*, 229 Neb. at 282, 426 N.W.2d at 516.

Instead, we held that because the defendant's counsel reasonably believed that further investigation and extensive witness interviews would not lead to any unknown or exculpatory facts, his decision not to undertake the various investigations that the defendant insisted should have been made was not ineffective assistance of counsel. As in *State v. Painter, supra*, Palmer has not asserted any additional exculpatory facts that his counsel would have uncovered through additional investigations. Palmer merely alleges that the additional investigations should have been conducted. We have no basis for determining whether the investigations and interviews that Palmer insists should have taken place would have uncovered any evidence which would have led to a different sentence for Palmer. As such, these allegations are insufficient to support postconviction relief.

Related to his claim of ineffective assistance of counsel, Palmer complains that prior to his third sentencing hearing, his counsel instructed him not to talk to the probation officer and that his counsel did not provide the probation officer with any witnesses or records regarding Palmer's personal history. Without addressing whether such advice and action by Palmer's counsel was deficient performance, we reject this assignment of error. Even if Palmer's counsel's performance was deficient, this behavior would not establish a claim of ineffective assistance of counsel.

Any information Palmer would have given to the probation officer regarding his personal history could have been raised by Palmer at the sentencing hearing, either through witnesses or through the introduction of other evidence. Palmer has not demonstrated, and indeed cannot demonstrate, that had his counsel given him different advice with respect to the probation officer's investigation, such advice would have, with a reasonable probability, produced a different result in Palmer's sentencing.

### (e) Inadequate Appellate Argument Regarding Ex Post Facto Issue
### (Assignment of Error No. 13)

Palmer complains that his counsel in the appeal of his third trial did not adequately argue that the application of § 27-505 as amended was a violation of the ex post facto provision of the

U.S. Constitution. Palmer concedes that his counsel raised an ex post facto argument regarding this statute. Palmer argues, however, that his counsel should have been more effective in the manner in which he argued. In particular, Palmer insists that his counsel failed to raise a particular argument from *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798), and *Kring v. Missouri*, 107 U.S. 221, 2 S. Ct. 443, 27 L. Ed. 506 (1883), *overruled, Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990), to distinguish a line of cases relied on by this court in *Palmer III* to find that the admissibility of Cherie Palmer's testimony under § 27-505 (Reissue 1995) was not an ex post facto application of the law against Palmer.

The ex post facto issue and the cases referred to above were thoroughly addressed by this court in Palmer's direct appeal. See *Palmer III*. Palmer now apparently seeks to use the claim of ineffective assistance of counsel to reopen our decision on this issue in *Palmer III*. This is not a proper basis for postconviction relief. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased. *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991). Therefore, we decline to reopen the ex post facto issue in the present appeal.

### (f) Failure to Challenge Sufficiency of Information
### (Assignment of Error No. 15)

Palmer insists that trial counsel in each of his trials should have argued that because the information failed to provide a specific listing of the elements of the underlying felony supporting the allegation of felony murder, it was defective, and that, therefore, Palmer is entitled to a new trial. Palmer now insists that the failure to raise this issue in any of his trials was ineffective assistance of counsel.

We reversed Palmer's first two convictions, and remanded for new trials. Thus, this assignment of error is moot with respect to those two trials. Palmer's assignment of error is thus reduced to an allegation that trial counsel in his third trial was ineffective in failing to challenge the sufficiency of the information by a plea in abatement. This assignment of error has no merit.

It is well established that an information which alleges the commission of a crime using the language of the statute defining that crime or terms equivalent to such statutory definition is sufficient. *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993); *State v. Spiegel*, 239 Neb. 233, 474 N.W.2d 873 (1991). Here, Palmer was charged with first degree murder under a felony murder theory. Neb. Rev. Stat. § 28-303 (Reissue 1995) states: "A person commits murder in the first degree if he kills another person . . . (2) in the perpetration of or attempt to perpetrate any . . . robbery . . . ."

The information filed against Palmer alleged that "Charles Jess Palmer . . . in the perpetration of a robbery of Eugene William Zimmerman, did kill Eugene William Zimmerman." This allegation is a nearly verbatim recitation of the language of § 28-303. As such, it was a sufficient information upon which to charge and convict Palmer.

As we held in *State v. Bowen, supra*, an information or complaint is sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. The information in the present case stated the charge Palmer was required to defend against in the language of the statute. The information instructed Palmer that the underlying felony which would be alleged at trial was that of robbery. We find that this charge in the information was a fair means of informing Palmer of the charge he would have to defend against. Therefore, this assignment of error has no merit.

### (g) Ineffective Assistance of Counsel in Palmer's First Trial (Assignments of Error Nos. 16 Through 20)

Palmer assigns a series of errors alleging that his counsel was ineffective during both the trial and the sentencing phases of his first trial. Palmer argues that this is the first opportunity for reviewing the errors of counsel in his first trial because Palmer utilized the same counsel until the present motion for postconviction relief. Consequently, Palmer requests that this court review the effectiveness of his counsel in the trial and sentencing phases of his first trial. The State insists that because Palmer's first conviction and sentence were overturned and Palmer received a new trial, his first trial is a nullity and has no

relevance to the present action. In response, Palmer argues that the errors which he raises regarding his first trial are not nullities, but have been preserved for review in light of *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

The U.S. Supreme Court has long held that if a convicted defendant obtains a reversal and remand for a new trial on appeal, the State may reprosecute. See *United States v. Ball*, 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896). As the Court explained in *North Carolina v. Pearce*, 395 U.S. 711, 721, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989), when there is a reversal of a conviction, "the original conviction has . . . been wholly nullified and the slate wiped clean." This principle is colloquially referred to as the "clean slate rule."

An exception to this rule occurs when the petitioner's conviction is set aside on the ground that there was insufficient evidence presented at trial to support the verdict. *Burks v. United States, supra*. In *Burks v. United States, supra*, the Court of Appeals found the evidence was insufficient and ordered the case remanded to the District Court for a determination of whether a new trial should be ordered or a directed verdict of acquittal entered. The Court reversed, stating:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. . . .
>
> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a

matter of law that the jury could not properly have returned a verdict of guilty.

(Emphasis omitted.) 437 U.S. at 15-16. In summary, *Burks v. United States, supra*, stands for the proposition that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient.

■■■■ The clean slate rule and its exception also apply to the sentencing phase of a retrial. In *Bullington v. Missouri*, 451 U.S. 430, 443, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981), the Court noted that decisions since *North Carolina v. Pearce, supra*, have developed an exception to the clean slate rule: "[T]he 'clean slate' rationale . . . is inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case." The Court explained in *Bullington v. Missouri, supra*, that it is usually "impossible to conclude that a sentence less than the statutory maximum 'constitute[s] a decision to the effect that the government has failed to prove its case.'" 451 U.S. at 443. Nevertheless, the Court held that when a state enacts "a capital sentencing procedure that resembles a trial on the issue of guilt or innocence [such a procedure] explicitly requires the jury to determine whether the prosecution has 'proved its case.'" (Emphasis omitted.) 451 U.S. at 444. Thus, the Court held that a jury determination that a particular defendant should be given a life sentence rather than a death sentence should be treated as an acquittal of the death sentence for purposes of the Double Jeopardy Clause. As a result, *Bullington v. Missouri, supra*, held that a defendant sentenced to life imprisonment by a capital sentencing jury is protected by the Double Jeopardy Clause from imposition of the death penalty in the event that the defendant obtains reversal of the conviction and is retried and convicted.

■■ In *State v. Rust*, 247 Neb. 503, 528 N.W.2d 320 (1995), citing *Arizona v. Rumsey*, 467 U.S. 203, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984), we held that Nebraska's capital sentencing procedures have the characteristics which the U.S. Supreme Court found in *Bullington v. Missouri, supra*, to resemble a trial and that double jeopardy concerns attach at a capital sentencing hearing in Nebraska.

Our examination of Palmer's assignments of error regarding the first trial will be limited to whether the evidence in the first trial was sufficient to sustain the conviction and sentence. Thus, the retrial of Palmer corrected those errors not assigned as to the sufficiency of the evidence. For the purpose of determining the sufficiency of the evidence in the first trial, we limit our review of the record to that evidence which was introduced at the first trial and first sentencing hearing. As this court has never specifically addressed whether the State presented sufficient evidence to sustain Palmer's conviction and sentence of death in his first trial, we now address those issues.

Palmer argues that after *Palmer I* excluded all evidence obtained via hypnosis, the State failed to present sufficient evidence to convict him and, thus, pursuant to the reasoning of *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), and *Bullington v. Missouri, supra*, his second and third trials offend double jeopardy. Palmer's argument that there was insufficient evidence to convict him is unpersuasive in light of *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988).

In *Lockhart v. Nelson, supra*, the trial court erroneously admitted certain evidence at a sentence enhancement without which the remaining evidence was insufficient to support the judgment of conviction. The defendant argued that if the remaining evidence was insufficient to convict him, then the Double Jeopardy Clause barred his retrial. However, the U.S. Supreme Court rejected this argument. The Court explained:

> It is quite clear from our opinion in *Burks* that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause—indeed, that was the *ratio decidendi* of *Burks*, see 437 U.S., at 16-17—and the overwhelming majority of appellate courts considering the question have agreed. The basis for the *Burks* exception to the general rule is that a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. A trial court in passing on such a motion considers all of the evidence it has admitted, and to make the

analogy complete it must be this same quantum of evidence which is considered by the reviewing court. *Lockhart*, 488 U.S. at 40-42.

Therefore, in our evaluation of the sufficiency of the evidence, we consider all evidence admitted in the first trial in order to decide whether there was sufficient evidence to sustain both the conviction and the imposition of a death sentence.

There was sufficient evidence to convict Palmer of murder in his first trial. The State proved that several items were stolen from the victim's shop and that Palmer sold these items in Texas after the murder. An eyewitness saw a tall man and a woman leaving the victim's shop near the time of the murder. The man was carrying a baby. Monica Zimmerman, Zimmerman's wife, testified that Palmer, Cherie Palmer, and the baby had been to the Zimmermans' house on several occasions prior to March 6, 1979, to transact business with Zimmerman. On these occasions, Palmer had sold coins to Zimmerman. Monica Zimmerman described and identified the items missing from the Zimmerman home on the day of the murder. Items seized from Palmer at the time of his arrest in Austin, Texas, as well as items sold to Garza in Texas, were identified as the items stolen from Zimmerman at the time of the murder.

Moreover, the federal courts explicitly addressed the issue of whether the State presented sufficient evidence to convict Palmer and have concluded that the State had met its burden of proof. In *Palmer v. Grammer*, 863 F.2d 588 (8th Cir. 1988), Palmer questioned the sufficiency of the evidence in his first trial. However, Palmer argued that only that evidence remaining after this court had excluded all evidence obtained via hypnosis should be considered in the evaluation of the sufficiency of the evidence. The Court of Appeals noted that neither *Palmer I* nor *Palmer II* had addressed whether the evidence was sufficient to sustain the conviction and sentence. The District Court dismissed this habeas corpus petition as premature, and the Court of Appeals remanded the cause for further consideration. On remand, the District Court dismissed the claim as meritless, and the Court of Appeals held the matter in abeyance pending resolution of all proceedings in the Nebraska courts.

Thereafter, in *Palmer III*, we affirmed Palmer's conviction and death sentence. The Court of Appeals affirmed the District Court's decision that Palmer's habeas petition lacked merit, but found that Palmer should be granted leave to amend his petition so as to set forth in greater clarity his double jeopardy claim.

Upon remand, the District Court again denied relief, and the Court of Appeals again remanded. See *Palmer v. Clarke*, 961 F.2d 771 (8th Cir. 1992). In his amended petition, Palmer contended that the totality of the evidence at each of his first two trials was insufficient to convict him. Reviewing all the evidence in each of the first two trials, including the improperly admitted evidence, the magistrate judge concluded that sufficient evidence supported Palmer's first two convictions, and the District Court adopted the magistrate judge's recommendation and denied Palmer's petition. In remanding, the Court of Appeals agreed with the District Court's conclusion that the totality of the evidence at Palmer's first trial was sufficient to convict him and that, therefore, Palmer's second trial did not violate the Double Jeopardy Clause. Therefore, the U.S. District Court, as affirmed by the Court of Appeals, concluded that the evidence at Palmer's first trial was sufficient to sustain the conviction. The Court of Appeals remanded the issue of the sufficiency of the evidence of Palmer's second trial to the District Court. The District Court denied relief, and Palmer appealed. In *Palmer v. Clarke*, 12 F.3d 781 (8th Cir. 1993), the Court of Appeals concluded that the evidence at Palmer's second trial, including Cherie Palmer's testimony, was sufficient to convict him. Upon our independent analysis of the evidence, we also conclude that there was sufficient evidence to convict Palmer in his first trial.

Likewise, there was sufficient evidence to sentence Palmer to death. In *Palmer III*, 224 Neb. at 320, 399 N.W.2d at 731-32, we held that for purposes of § 29-2523(1)(d) as an aggravating circumstance, exceptional depravity is present where it is shown beyond a reasonable doubt that one of the following exists in reference to a first degree murder: "(1) apparent relishing of the murder by the killer; (2) infliction of gratuitous violence on the victim; (3) needless mutilation of the victim; (4) senselessness of the crime; or (5) helplessness of the victim." We explained that these five factors are disjunctive, and therefore, where one

or more of the factors are present, there may be a finding of exceptional depravity pursuant to § 29-2523(1)(d). Applying the factors set forth under § 29-2523(1)(d) to determine the aggravating circumstances, it is clear that infliction of gratuitous violence upon Zimmerman and the helplessness of Zimmerman were present beyond a reasonable doubt.

The gratuitous violence was evidenced by the injuries described by the pathologist who testified. The pathologist stated that Zimmerman's voice box and windpipe were broken, that his head was congested with entrapped blood, and that there were many bruises and cuts on his face. The pathologist opined that these injuries had preceded death. The time of death was fixed at 4:30 p.m., and the cause of death was strangulation. The evidence also showed that Zimmerman had been hit on the head several times with an unknown object and that his wrists had been tied behind his back.

The helplessness of Zimmerman was evidenced by the fact that Zimmerman was immediately bound and could not have prevented the robbery. Zimmerman was bound and lay helpless on the bed before he was beaten and strangled by Palmer. Thus, there was sufficient evidence of the manner in which Zimmerman died to support a finding that aggravating circumstance (1)(d) existed beyond a reasonable doubt.

Additionally, the plain language of § 29-2523 clearly provides that a sentencer may find aggravating circumstance (1)(b) to apply where the sentencer finds that the murder was committed "in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." Zimmerman knew both Palmer and Cherie Palmer for several months prior to the robbery. Therefore, absent the murder, Zimmerman would have been fully capable of reporting the robbery and identifying Palmer and Cherie Palmer as the perpetrators. From this, the sentencing panel concluded that one motive for the murder could have been Palmer's desire to conceal his identity and the identity of Cherie Palmer as perpetrators of the robbery.

In contrast to Palmer's argument, the fact that Cherie Palmer was also present during the robbery does not undermine the basis for this aggravating circumstance. At the time of the rob-

bery, Palmer could have believed that Cherie Palmer was a co-perpetrator in the robbery and would, to promote her own interests, conceal the couple's identity. Palmer also had an interest in protecting the identity of Cherie Palmer because she was a person who might later be found to be a coperpetrator and be pressured to testify against him. Palmer might also have viewed Cherie Palmer as a compliant spouse who would not testify against him.

Whatever the case, Palmer clearly could have considered Zimmerman to be a witness to the crime, and the plain language of § 29-2523(1)(b) applies to the murder of such a witness where the evidence supports a finding that the murder was committed in an apparent effort to conceal the identity of the perpetrator. As such, there was sufficient evidence to support this finding beyond a reasonable doubt.

We emphasize that our examination of the sentencing phase of *Palmer I* goes only to the sufficiency of the evidence to sustain the sentence of death that was imposed. Obviously, had Palmer been sentenced to life imprisonment and not to death, the evidence would have been insufficient to support the death penalty. See *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). Based upon our review of this issue, we conclude there was sufficient evidence in the first trial to support the finding beyond a reasonable doubt that Palmer should be sentenced to death.

In assignment of error No. 19, Palmer claims that his counsel was ineffective when counsel failed to argue in his first appeal that the evidence was insufficient to convict once this court found that the hypnotic evidence had been wrongfully admitted. Similarly, in assignment of error No. 20, Palmer asserts that his counsel was ineffective for not filing a plea in bar prior to the second trial, challenging the sufficiency of the evidence to convict him in the first trial. We need not address these assignments of error, for we conclude that the State presented sufficient evidence in the first trial to convict Palmer of felony murder and to sentence him to death. Having so concluded, we find the clean slate rule applies and the exception announced in *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), is inapplicable.

All errors pertaining to the first trial and sentencing were corrected by the retrial and, thus, are not considered by this court. Once it has been determined that the evidence was sufficient to sustain the conviction and sentence, then the slate is wiped clean, and Palmer is not permitted to raise issues regarding his assistance of counsel at his first trial. Palmer's new trial after *Palmer I* was all the relief to which he was entitled. Accordingly, assignments of error Nos. 16 through 20 are without merit.

## VI. CONCLUSION

Having considered all of Palmer's assignments of error, we find that his claims are without merit, and the judgment of the Hall County District Court is affirmed.

AFFIRMED.

STEPHAN, J., not participating.

CONNOLLY, J., concurring

In assignments of error Nos. 16 through 19, Palmer contends that he received ineffective assistance of counsel in his first trial and on his first direct appeal. He argues that if he had received effective assistance of counsel, the evidence would have been insufficient to support his conviction and sentence and that this court would therefore have dismissed the charges. Therefore, Palmer first asks this court to address whether his counsel was ineffective, and second, had counsel been effective, would the evidence have been sufficient to support his conviction and sentence.

The majority opinion concludes that Palmer's retrial corrected any errors resulting from the ineffectiveness of counsel and that this court's review of the sufficiency of the evidence considers all the evidence admitted in the first trial, citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). Thus, the majority does not address whether Palmer's counsel was effective or whether the evidence would have been sufficient to support the conviction and sentence had counsel been effective. Although I agree with the majority's conclusion, I believe additional analysis is warranted.

In *Lockhart*, the Court considered "whether the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because

evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction . . . ." 488 U.S. at 40. Thus, the concern in *Lockhart* was the effect of the erroneous admission of evidence in and of itself, not the erroneous admission of evidence resulting from the ineffective assistance of counsel. The erroneous, prejudicial admission of evidence does not necessarily render the assistance provided by counsel ineffective. It must also be shown that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The guarantee of counsel is rooted in the Sixth Amendment, which "recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. at 685. *Lockhart* did not purport to examine the relationship between the Double Jeopardy Clause and the Sixth Amendment, and thus, *Lockhart* does not directly address the circumstances at issue herein. Palmer is alleging more than a prejudicial error in the admission of evidence—he is alleging that his Sixth Amendment right to counsel was violated. Thus, the question presented is whether the holding in *Lockhart* extends to ineffective assistance of counsel claims.

An examination of the Sixth Amendment right to counsel reveals that the rationale underlying *Lockhart* is indeed applicable to ineffective assistance of counsel claims. In *Lockhart*, the Court distinguished actual insufficiency of the evidence from "trial errors":

> While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect."

*Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988), quoting *Burks v. United States*, 437 U.S.1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). The Court noted that an error in admitting a particular piece of evidence was a "trial error,"

which implied nothing with respect to the defendant's guilt or innocence. Indeed, as the Court recognized, had the trial court in *Lockhart* made the appropriate ruling concerning the disputed evidence, "the trial judge would presumably have allowed the prosecutor an opportunity to offer [additional] evidence." 488 U.S. at 42. Thus, the Court's holding that retrial is permitted merely "recreates the situation that would have been obtained if the trial court had excluded the evidence." *Id.*

Despite the Court's use of the term "trial error," it is clear that *Lockhart* focuses on the distinction between error in the trial *process* and error in considering whether the quantum of evidence was sufficient to support the conviction and sentence (which is also a "trial error," but of a different kind). Although ineffective assistance of counsel is of fundamental importance, counsel's failure to render effective assistance nevertheless results in an error in the trial process, see *Strickland v. Washington, supra,* not an error in judgment concerning the quantum of evidence needed to convict and sentence. Insofar as the Double Jeopardy Clause is concerned, it makes little difference whether the prejudicial error in the trial process was merely the result of an error in the admission of evidence or due to the ineffectiveness of counsel. Indeed, had counsel been effective, the State would have had an opportunity to offer other evidence. Were we to address Palmer's ineffectiveness/sufficiency concerns now, without having given the State such an opportunity (as was provided the State in Palmer's subsequent trials), we would put Palmer in a better position than if his counsel had been effective. That result is clearly not required by the Double Jeopardy Clause or by the Sixth Amendment.

Because I conclude that the holding in *Lockhart v. Nelson, supra,* applies to ineffective assistance of counsel claims, I concur.