STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE, V. JOHN
E. RUST, APPELLEE AND CROSS-APPELLANT.
528 N.W.2d 320

Filed March 3, 1995. No. S-94-376.

504

Don Stenberg, Attorney General, and J. Kirk Brown for appellant.

Emil M. Fabian and Barbara Thielen, of Fabian & Thielen, for appellee.

John E. Rust, pro se.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and BOSLAUGH, J., Retired.

PER CURIAM.

Because of events which took place on February 21, 1975,

the defendant–appellee, John E. Rust, was found guilty in the district court of one count of felony murder and three counts of shooting with intent to kill, wound, or maim. He was thereafter, on October 30, 1975, sentenced to death on the murder conviction and to imprisonment for concurrent periods of not less than 16²/₃ nor more than 50 years on each of the shooting convictions. He was later, on March 25, 1994, resentenced on the murder conviction to life imprisonment. This being a case in which a life sentence was imposed and a sentence of death is sought, the plaintiff State, under the provisions of Neb. Rev. Stat. § 24–1105 (Cum. Supp. 1994), appealed directly to this court, claiming the sentence to be excessively lenient. Rust resists that claim and cross–appeals, asserting he has been improperly denied credit for the time he has already served. We affirm.

## BACKGROUND

On Rust's direct appeal, we rejected his various challenges to the October 1975 judgment of the district court and affirmed. *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977), *cert. denied* 434 U.S. 912, 98 S. Ct. 313, 54 L. Ed. 2d 198.

Rust then unsuccessfully challenged his murder conviction and sentence under the Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29–3001 to 29–3004 (Reissue 1989). *State v. Rust*, 208 Neb. 320, 303 N.W.2d 490 (1981), *cert. denied* 454 U.S. 882, 102 S. Ct. 368, 70 L. Ed. 2d 194.

Rust next brought an action in the federal district court, but because certain claims had not been exhausted at the state level, he was required to seek further postconviction relief in the state courts; relief was again denied. *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986), *cert. denied* 481 U.S. 1042, 107 S. Ct. 1987, 95 L. Ed. 2d 826 (1987).

After unsuccessfully seeking state habeas corpus relief, *Rust v. Gunter*, 228 Neb. 141, 421 N.W.2d 458 (1988), Rust initiated a habeas corpus action in the federal district court.

The federal district court abstained from considering certain issues but ordered that Rust's murder sentence be reduced to life imprisonment unless the State initiated capital sentencing proceedings. Upon the respondent warden's appeal, the U.S.

Court of Appeals for the Eighth Circuit remanded the cause for consideration of the remaining issues. *Rust v. Clarke*, 960 F.2d 72 (8th Cir. 1992).

The federal district court then entered an additional order granting habeas relief on Rust's claim of ineffective assistance of counsel at the initial sentencing proceeding. Accordingly, the federal district court entered judgment in favor of Rust and again ordered that his murder sentence be reduced to life imprisonment unless the State initiated capital resentencing. Appeal was taken once again, whereupon the Eighth Circuit affirmed the federal district court's judgment, holding that this court's earlier finding that the existence of each of the aggravating factors was proven beyond a reasonable doubt violated due process. *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1993). The U.S. Supreme Court denied the State's request for certiorari. *Hopkins v. Rust*, ____ U.S. ____, 113 S. Ct. 2950, 124 L. Ed. 2d 697 (1993).

The State then instituted resentencing proceedings. A hearing was held before a three–judge panel, which ordered that Rust be sentenced to life imprisonment and that such sentence be served consecutively to the sentences previously imposed on the three shooting counts.

## STATE'S APPEAL

Claiming that the sentencing panel erred in its consideration of various aggravating circumstances, the State undertook this appeal under the authority found in Neb. Rev. Stat. § 29–2320 (Cum. Supp. 1994):

> Whenever a defendant is found guilty of a felony following a trial or the entry of a plea of guilty or tendering a plea of nolo contendere, the county attorney charged with the prosecution of such defendant may appeal the sentence imposed if such attorney reasonably believes, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient.

Rust argues that the imposition of a life sentence after the capital sentencing proceeding used here constitutes an acquittal of the death penalty and that as a result, the Double Jeopardy Clause contained in U.S. Const. amend. V prohibits any

reconsideration of such sentence.

We note that in *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990), we considered and affirmed a life sentence for a conviction of first degree murder which the State had appealed under § 29–2320 as being excessively lenient. We therein announced that the standard of review when the State appeals and claims that a sentence is excessively lenient is whether the sentencing court abused its discretion in the sentence imposed. We observe, however, that the parties did not raise, and we thus did not consider, the issue of whether the State may appeal under § 29–2320 a life sentence for a conviction of first degree murder. The question is therefore one of first impression.

In general, in the absence of specific statutory authorization, the State has no right to appeal an adverse ruling in a criminal case. *State v. Baird*, 238 Neb. 724, 472 N.W.2d 203 (1991); Neb. Rev. Stat. §§ 29–2315.01 and 25–1912 (Cum. Supp. 1994). Moreover, it is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been acquitted of the crime charged. *United States v. DiFrancesco*, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980); *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977); *Fong Foo v. United States*, 369 U.S. 141, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962).

However, the imposition of a particular sentence usually is not regarded as an "acquittal" of a more severe sentence that could have been imposed. *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). Thus, as a general matter, the Double Jeopardy Clause imposes no absolute prohibition of a harsher sentence at retrial after a defendant has succeeded in having an original conviction set aside. *Bullington, supra*. See, also, *DiFrancesco, supra*; *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973); *Stroud v. United States*, 251 U.S. 15, 40 S. Ct. 50, 64 L. Ed. 103 (1919).

But because Missouri's presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence, the Court in *Bullington, supra*, reasoned that the first sentencer's imposition

of a life sentence operated as an acquittal of the death sentence. Thus, the Double Jeopardy Clause prevented imposition of the death sentence after the first sentence was vacated.

In so holding, the *Bullington* Court identified several characteristics of Missouri's sentencing proceeding that made it comparable to a trial for double jeopardy purposes. First, the discretion of the sentencer, the jury, was restricted to precisely two options: death or life imprisonment without possibility of release for 50 years. Second, the sentencer was to make its decision guided by substantive standards and based on evidence introduced in a separate proceeding that formally resembled a trial. Finally, the prosecution had to prove certain statutorily defined facts beyond a reasonable doubt in order to support a sentence of death. For those reasons, the *Bullington* Court determined that the Missouri sentencer had to determine that the prosecution failed to prove its case when it imposed a sentence of life imprisonment in a capital sentencing proceeding.

The *Bullington* Court explained that the sentencing procedures it had considered in the past did not have the hallmarks of a trial on guilt or innocence. The Court specifically noted that the sentencing procedures previously considered did not require a separate sentencing proceeding at which the prosecution was required to prove particular facts beyond a reasonable doubt to justify a particular sentence. Moreover, in the previously considered noncapital sentencing procedures, the sentencer's discretion was essentially unfettered. See, *Chaffin, supra*; *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *Stroud, supra*. Thus, the *Bullington* Court reasoned that the values underlying the principle that a verdict of acquittal on the issue of guilt or innocence is absolutely final were equally applicable when a sentencer rejected the state's claim that a defendant deserved to die.

As stated in *Green v. United States*, 355 U.S. 184, 187–88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957):

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be

allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

The *Bullington* Court further reasoned that the " 'embarrassment, expense and ordeal' " and the " 'anxiety and insecurity' " faced by a defendant at the penalty phase of a Missouri capital murder trial were at least equivalent to that faced by any defendant at the guilt phase of a criminal trial. 451 U.S. at 445. The " 'unacceptably high risk that the [prosecution], with its superior resources, would wear down a defendant,' " thereby leading to an erroneously imposed death sentence, would exist if the State were to have a further opportunity to convince a jury to impose the ultimate punishment. *Id.*, quoting *United States v. DiFrancesco*, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980). The *Bullington* Court reasoned that Missouri's use of the reasonable doubt standard indicated that in a capital sentencing proceeding, it was the State, not the defendant, that should bear " 'almost the entire risk of error.' " 451 U.S. at 446, quoting *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

The *Bullington* Court also cautioned that its decision did not depend on the State's announced intention to rely only upon the same aggravating circumstances it sought to prove at petitioner's first trial or upon its statement that it would introduce no new evidence in support of its contention that the petitioner deserved the death penalty. The Court emphasized that its decision was based upon the principle that the state, having had " 'one fair opportunity to offer whatever proof it could assemble,' . . . is not entitled to another." 451 U.S. at 446.

The *Bullington* rationale was extended in *Arizona v. Rumsey*, 467 U.S. 203, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984), to a capital sentencing scheme in which the judge, as opposed to a jury, had initially determined that a life sentence was appropriate.

The *Rumsey* jury convicted the defendant of first degree

murder resulting from an armed robbery. In accordance with Arizona's statutory capital sentencing scheme, the trial judge, without a jury, thereafter conducted a separate hearing on the appropriate sentence. Aggravating and mitigating circumstances were considered to determine whether death was the appropriate sentence. At the hearing, the state argued that three statutory aggravating circumstances were present. The defendant countered that no aggravating circumstances were present, but that several mitigating circumstances were.

The trial judge found no aggravating circumstances present and specifically found that the defendant did not commit the offense for the receipt or in expectation of anything of pecuniary value. Finding no aggravating circumstances present, the trial judge sentenced the defendant to life imprisonment without possibility of parole for 25 years, as statutorily mandated for first degree murder when the death penalty was not imposed. The trial judge also sentenced the defendant to a consecutive term of imprisonment for 21 years on the armed robbery conviction.

The defendant appealed, arguing that the imposition of consecutive sentences violated both federal and state law. Under Arizona law, the defendant's appeal permitted the state to file a cross-appeal from the life sentence. In the cross-appeal, the state contended that the trial court had committed an error of law in interpreting the pecuniary gain aggravating circumstance to apply only to contract killings. The state supreme court rejected the defendant's challenge to his sentence; however, it agreed that the trial court had misinterpreted an aggravating circumstance. Because of the trial court's misinterpretation, the Arizona Supreme Court concluded that the previously imposed sentence of life imprisonment would have to be set aside and the matter remanded for redetermination of aggravating and mitigating circumstances and resentencing. The sentence for armed robbery was left undisturbed.

On remand, the trial court held a new sentencing hearing; neither party presented any new evidence, but the defendant argued that imposing the death penalty would violate *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). The trial court found that the aggravating circumstance

concerning commission of the murder for pecuniary gain was the only aggravating circumstance present and further found that no mitigating circumstances were sufficiently substantial to call for leniency. This time the trial court sentenced the defendant to death as required under Arizona statute.

In his mandatory appeal to the Arizona Supreme Court, the defendant argued that imposition of the death sentence on resentencing, after he had effectively been acquitted of death at his initial sentencing, violated the Double Jeopardy Clause of the Fifth Amendment. The Arizona Supreme Court agreed and ordered the defendant's sentence for first degree murder reduced to life imprisonment.

Granting certiorari, the U.S. Supreme Court determined that the Arizona sentencing proceeding shared the characteristics of the Missouri proceeding that made it resemble a trial for purposes of the Double Jeopardy Clause. Specifically, the Court noted that the sentencer, the trial judge, was required to choose between two options, death or life imprisonment, and that the decision was guided by detailed statutory standards defining aggravating and mitigating circumstances; in particular, death could not be imposed unless one aggravating circumstance was found, whereas death was required if there was one aggravating circumstance and no mitigating circumstance sufficiently substantial to call for leniency. The sentencer was required to make findings with respect to each of the statutory aggravating and mitigating circumstances, and the sentencing hearing involved the submission of evidence and the presentation of argument. The Court further noted that the usual rules of evidence governed the admission of evidence of aggravating circumstances and that the state had to prove the existence of aggravating circumstances beyond a reasonable doubt. The Court held that for double jeopardy purposes, these characteristics made the Arizona capital sentencing proceeding indistinguishable from the capital sentencing proceeding in Missouri.

The U.S. Supreme Court also noted that in making its findings, the trial court relied on a misconstruction of the statute defining the pecuniary gain aggravating circumstance. However, the Court reasoned that reliance on an error of law did not

change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. The Court stated that the fact that acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but does not alter its essential character. Therefore, the Court concluded that an acquittal on the merits barred retrial even if based on legal error.

The *Rumsey* Court further reasoned that the fact that the sentencer was the trial judge rather than the jury did not render the sentencing proceeding any less like a trial, citing *United States v. Morrison*, 429 U.S. 1, 97 S. Ct. 24, 50 L. Ed. 2d 1 (1976) (Double Jeopardy Clause treats bench and jury trials alike). The Court further explained that the availability of appellate review, including reweighing of aggravating and mitigating circumstances, did not make the appellate process part of a single continuing sentencing proceeding. The Court additionally determined that as no appeal need be taken if life imprisonment were imposed, the appellate reweighing could work only to a defendant's advantage. Therefore, the Court held that a sentence imposed after a completed Arizona capital sentencing hearing is a judgment which triggers the protections of the Double Jeopardy Clause.

Neb. Rev. Stat. § 29–2520 (Reissue 1989) requires that after one is found guilty of first degree murder, the trial judge or a three–judge panel conduct a separate hearing to determine the sentence to be imposed. The procedure is found in Neb. Rev. Stat. § 29–2522 (Reissue 1989):

> After hearing all of the evidence and arguments in the sentencing proceeding, the judge or judges shall fix the sentence at either death or life imprisonment, but such determination shall be based upon the following considerations:
>
> (1) Whether sufficient aggravating circumstances exist to justify imposition of a sentence of death;
>
> (2) Whether sufficient mitigating circumstances exist which approach or exceed the weight given to the aggravating circumstances; or
>
> (3) Whether the sentence of death is excessive or

disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Neb. Rev. Stat. § 29-2523 (Reissue 1989) defines a number of aggravating and mitigating circumstances. Although the Nebraska sentencer is not limited to a consideration of only the statutorily defined mitigating circumstances, *State v. Moore*, 210 Neb.. 457, 316 N.W.2d 33 (1982), the situation with respect to aggravating circumstances is otherwise. What constitutes an aggravating circumstance is left neither to the discretion of the sentencer nor to this court, but is controlled by statute. *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986), *cert. denied*, 484 U.S. 905, 108 S. Ct. 247, 98 L. Ed. 2d 205 (1987). Aggravating circumstances must be proved beyond a reasonable doubt. *Id.*; *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984).

The capital sentencing procedure of this state shares the same characteristics which the U.S. Supreme Court found to resemble a trial in the Arizona and Missouri capital sentencing proceedings. Under Nebraska law, first degree murder is punishable by death or life imprisonment. Neb. Rev. Stat. §§ 28-303 and 28-105 (Reissue 1989). Therefore, the sentencer is not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing is required, and the sentencer is required to choose between the above-mentioned two options and only those options. See § 28-303. Moreover, statutory standards guide the sentencer's choice between a sentence of life or death. Furthermore, here the State did not simply recommend what it felt to be an appropriate punishment, it undertook the "burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts." *Bullington v. Missouri*, 451 U.S. 430, 438, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981).

The fact that the Nebraska sentencer is a three-judge panel instead of a single judge or a jury is not important. See *Arizona v. Rumsey*, 467 U.S. 203, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984). Nor does the availability of appellate review make the appellate process part of a single continuing sentencing proceeding. *Id.*

Similarly, the discretion granted the sentencer with regard to the admission of evidence regarding nonstatutory mitigating circumstances does not destroy the trial analogy. See, Mo. Ann. Stat. § 565.012 (Vernon 1979); Ariz. Rev. Stat. Ann. § 13–703 (1989); *Bullington, supra*; *Rumsey, supra*. Moreover, as in Missouri and Arizona, in our sentencing proceeding the admission of evidence is restricted by the rules of relevancy. See, Neb. Rev. Stat. § 29–2521 (Reissue 1989); Mo. Ann. Stat. § 565.012.1; Ariz. Rev. Stat. Ann. § 13–703.

Nor is the fact that Rust was initially sentenced to death of any significance, for that sentence was found to be constitutionally infirm and thus of no force or effect. See *Poland v. Arizona*, 476 U.S. 147, 106 S. Ct. 1749, 90 L. Ed. 2d 123 (1986) (conviction reversed on appeal is nullified and slate wiped clean). We heretofore have acknowledged that an appellate finding of insufficient evidence to convict is tantamount to an acquittal. Therefore, once the reviewing court has found the evidence legally insufficient, the Double Jeopardy Clause precludes a second trial. *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987). We have also previously recognized that *Bullington, supra*, and *Rumsey, supra*, applied the protection of the Double Jeopardy Clause to certain capital sentencing procedures. *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986), *cert. denied* 481 U.S. 1042, 107 S. Ct. 1987, 95 L. Ed. 2d 826 (1987). We recognize that in *Poland*, the Double Jeopardy Clause was held not to prohibit the reimposition of a sentence of death after the original such sentence had been nullified on appeal. However, the difference between the situation presented here and that presented in *Poland* is that here, there was an intervening life sentence. It is the life sentence imposed at the resentencing hearing which served to acquit Rust of the harsher death sentence. Accordingly, the holdings of the U.S. Supreme Court in *Bullington*, *Poland*, and *Rumsey* make the protections of the Double Jeopardy Clause applicable to the capital resentencing procedure involved and prevent the State from challenging as excessively lenient the life sentence imposed in this case.

## RUST'S CROSS-APPEAL

In his cross-appeal, Rust asserts that the sentencing panel erred in not crediting the life sentence it imposed with the time he spent imprisoned on the earlier sentence of death for the first degree felony murder conviction.

First, he urges that as the original sentencer did not specify whether the death sentence on the murder conviction was to be served concurrently or consecutively with the sentences on the shooting convictions, the death sentence was to be served concurrently with those other sentences. But it is clear that one cannot concurrently serve a term of years with a death sentence.

> One may, while alive, simultaneously serve time to be applied to two sentences. He may not, however, be at the same time alive and dead, as the definition of one condition excludes the other. Consequently, any rule that in the absence of a consecutiveness direction two sentences pronounced at the same time by the same court are to be served concurrently can have no application when death has been imposed as one of the sentences.

*State v. Jones*, 218 Neb. 713, 715, 358 N.W.2d 765, 767 (1984). Thus, there is no merit to that argument.

Rust next argues that Neb. Rev. Stat. § 83-1,106 (Reissue 1994) mandates that credit be given for time an offender has spent in custody. That statute provides that an offender be given credit against the maximum term and any minimum term for time spent in custody as a result of the criminal charge for which a prison sentence is imposed. However, on being sentenced to life imprisonment for first degree murder, a defendant is not entitled to credit for time in custodial detention pending trial and sentence. *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994); *State v. Lynch*, 215 Neb. 528, 340 N.W.2d 128 (1983).

> The purpose of credit under § 83-1,106
>> is to avoid the situation where one convicted of a crime is incarcerated for a period greater than the maximum term of years prescribed as punishment for the particular offense. . . . By its very nature [a life] sentence is indefinite. . . . In the case of a life sentence, it is

impossible to impose punishment exceeding the term prescribed by statute.

*Lynch*, 215 Neb. at 537, 340 N.W.2d at 134.

Thus, neither is there any merit to Rust's second argument.

Finally, Rust attempts to make an argument that by virtue of the manner in which, under the policy and procedure manual of the Nebraska Board of Parole, a prisoner becomes eligible for having a life sentence commuted to a definite number of years and thereby becomes eligible for parole consideration, he is disadvantaged by the fact that the correction of his death sentence occurred after he had already spent a number of years in prison. But not only was the manual not made a part of the record below, the record is silent as to how the policy is to be applied to Rust. We thus do not reach the argument.

In so ruling, we are not unmindful that we earlier rejected the parties' joint stipulation to expand the record to include a portion of the manual. But the proper place to make a record is in the trial court, not in an appellate court. See, *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993) (absent plain error, issue raised for first time in appellate court disregarded, as trial court could not have committed error on issue not presented and submitted); *State v. Brockman*, 231 Neb. 982, 439 N.W.2d 84 (1989); *Dunbier v. Rafert*, 170 Neb. 570, 103 N.W.2d 814 (1960). Nor does the fact that Rust included part of the manual in his brief change the situation, for a party's brief may not expand the evidentiary record. See, *Gables CVF v. Bahr, Vermeer & Haecker Architect*, 244 Neb. 346, 506 N.W.2d 706 (1993); *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993). An appellate brief must limit itself to arguments supported by the appellate record. *Scott v. Hall*, 241 Neb. 420, 488 N.W.2d 549 (1992); *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461 (1987).

## CONCLUSION

Accordingly, the judgment below is affirmed.

AFFIRMED.