STATE OF NEBRASKA, APPELLEE, V.
PETER HOCHSTEIN, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
C. MICHAEL ANDERSON, APPELLANT.
632 N.W.2d 273

Filed August 3, 2001. Nos. S-99-1344, S-99-1345.

Emil M. Fabian, of Fabian & Thielen, for appellant Peter Hochstein, and, on brief, Peter Hochstein, pro se.

Alan G. Stoler and Jerry M. Hug for appellant C. Michael Anderson, and, on brief, C. Michael Anderson, pro se.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and INBODY, Judge.

MILLER-LERMAN, J.

## INTRODUCTION

In case No. S-99-1344, Peter Hochstein appeals the death penalty imposed upon him by the November 5, 1999, order of the district court for Douglas County. In case No. S-99-1345, C. Michael Anderson appeals the death penalty imposed upon him by the November 5, 1999, order of the district court for Douglas County. Because the appeals involve virtually identical issues, both cases will be discussed and resolved in this opinion.

In summary, Anderson and Hochstein were each convicted of murder in the first degree. Pursuant to the 1997 mandate of the Court of Appeals for the Eighth Circuit, three-judge sentencing panels were designated pursuant to Neb. Rev. Stat. § 29-2520(3) (Reissue 1995). In each case, two of the judges on the three-judge sentencing panel voted in favor of imposition of the death penalty and one judge voted against imposition of the death penalty. On November 5, 1999, the district court imposed a sentence of death in each case. Anderson and Hochstein each challenge the propriety of the imposition of the death penalty based on a nonunanimous vote of the three-judge sentencing panel, an issue which arose for the first time in these cases in 1999. As explained below, we conclude in each case that given the provisions of the "Special Procedure in Cases of Homicide," Neb. Rev. Stat. §§ 29-2519 through 29-2546 (Reissue 1995 & Cum. Supp. 1998), the district court erred as a matter of law in imposing sentences of death rather than life sentences where the sentencing panel designated under § 29-2520(3) did not vote unanimously to impose the death penalty. Where a defendant has been convicted

of murder in the first degree pursuant to Neb. Rev. Stat. § 28-401 (Reissue 1975) (now Neb. Rev. Stat. § 28-303 (Reissue 1995)), the permissible sentences are a sentence of life imprisonment or a sentence of death. See, § 29-2522 (Reissue 1975); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2000). Consequently, where the defendant has been convicted of first degree murder and acquitted of the death penalty due to the sentencing panel's failure to unanimously agree that a sentence of death should be imposed, by operation of law, the proper sentence which should be imposed by the district court is life imprisonment. Accordingly, in each case, we vacate the sentence of death, reverse the judgment, and remand the cause to the district court with directions to impose a sentence of life imprisonment. In all other respects, the orders of the district court are affirmed.

## STATEMENT OF FACTS

Anderson and Hochstein were originally sentenced to death in 1978 following their convictions for murder in the first degree. Their convictions and sentences were affirmed by this court in 1980. *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981).

During the period 1981 to 1997, Anderson and Hochstein sought postconviction and habeas corpus relief in the state and federal courts. Such petitions in state court were denied, and the denials were affirmed by this court as follows: *State v. Hochstein*, 216 Neb. 515, 344 N.W.2d 469 (1984); *State v. Anderson*, 216 Neb. 521, 344 N.W.2d 473 (1984); *Anderson and Hochstein v. Gunter*, 226 Neb. 724, 414 N.W.2d 281 (1987); and *Anderson v. Gunter*, 235 Neb. 560, 456 N.W.2d 286 (1990).

As noted, Anderson and Hochstein sought habeas corpus relief in the U.S. District Court for the District of Nebraska, and on January 16, 1996, the U.S. District Court issued a memorandum opinion in each case, rejecting the majority of Anderson's and Hochstein's claims but concluding that Anderson and Hochstein were entitled to relief on a sentencing claim relating to the "exceptional depravity" aggravating circumstance. *Anderson v. Hopkins*, CV. 84-L-741 (D. Neb. Jan. 16, 1996); *Hochstein v. Hopkins*, CV. 84-L-755 (D. Neb. Jan. 16, 1996). The U.S. District

Court determined that Anderson's and Hochstein's petitions for writs of habeas corpus must be granted based on this issue.

The U.S. District Court entered an order and judgment dated January 16, 1996, in each case stating:

> This action is remanded to the Nebraska Supreme Court to reduce petitioner's sentence to life imprisonment unless within ninety (90) days of the date of this opinion, [it] reweigh[s] the aggravating and mitigating circumstances, conduct[s] a harmless error review, or remand[s] the case back to the Douglas County District Court for resentencing.

The State appealed the decisions of the U.S. District Court to the Court of Appeals for the Eighth Circuit, and Anderson and Hochstein cross-appealed. The Court of Appeals for the Eighth Circuit affirmed the U.S. District Court's decisions in both cases. *Anderson v. Hopkins*, 113 F.3d 825 (8th Cir. 1997); *Hochstein v. Hopkins*, 113 F.3d 143 (8th Cir. 1997). The Court of Appeals for the Eighth Circuit concluded in each case:

> The order and judgment of the [U.S] district court is modified to provide that [each] petitioner's sentence will be reduced to life imprisonment, unless within ninety (90) days of the date of our mandate in the present case, the Nebraska Supreme Court reweighs the aggravating and mitigating circumstances, conducts an independent harmless error review, or remands the case to the sentencing court for resentencing.

*Anderson*, 113 F.3d at 832. Accord *Hochstein, supra.* The Court of Appeals for the Eighth Circuit subsequently modified the orders to change the reference to "ninety (90) days" to "one hundred and fifty (150) days." *Anderson v. Hopkins*, 122 F.3d 1160, 1161 (8th Cir. 1997); *Hochstein v. Hopkins*, 122 F.3d 1160, 1161 (8th Cir. 1997). The relief granted by the Court of Appeals for the Eighth Circuit was limited to the sentencing issue, and mandates were, accordingly, limited to the sentencing issue. The U.S. Supreme Court denied certiorari in the Hochstein case. *Hochstein v. Hopkins, Warden*, 522 U.S. 959, 118 S. Ct. 388, 139 L. Ed. 2d 303 (1997).

Subsequent to the issuance of the mandates of the Court of Appeals for the Eighth Circuit, the State, on July 17, 1997, filed motions with this court to initiate resentencing proceedings in

both cases. In response to the State's motions, on August 4, we entered an order in each case, stating, "Motion considered; no federal stay having issued, cause remanded to district court for resentencing."

Upon remand to the district court, a three-judge sentencing panel was named in each case pursuant to § 29-2520(3). A sentencing hearing as to both Anderson and Hochstein was held before the panel on September 7 and 8, 1999. Prior to the sentencing hearing, Anderson and Hochstein filed various preliminary motions including motions for new trials, motions to determine death eligibility, motions to prohibit imposition of the death penalty, and motions to declare the Nebraska death penalty unconstitutional. The district court entered an order on miscellaneous motions dated November 5, denying these and other pending motions filed by Anderson and Hochstein.

On November 5, 1999, the district court entered orders in both cases, imposing the death penalty on Anderson and Hochstein. The orders stated that as to the aggravating circumstances, the sentencing panel found that the aggravating circumstance set forth in § 29-2523(1)(c), that "[t]he murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant," existed beyond a reasonable doubt in each case. The sentencing panel found no other statutory aggravating circumstances present in either case. As to statutory mitigating circumstances, the sentencing panel found the mitigating circumstance set forth in § 29-2523(2)(a), that "[t]he offender has no significant history of prior criminal activity," was applicable in each case. The sentencing panel found no other statutory mitigating circumstances applicable in either case.

The sentencing panel further considered certain nonstatutory mitigating circumstances urged by Anderson and Hochstein. The following circumstances were urged by both Anderson and Hochstein: (1) the length of time on death row, then exceeding 21 years; (2) exemplary adjustment to institutional life; (3) lack of any evidence of future dangerousness; and (4) demonstration of rehabilitation while imprisoned. As to the first circumstance, the panel found that the length of incarceration did not constitute in itself a mitigating factor. As to the second circumstance, the order stated that while the evidence established that each

defendant had adjusted to institutional life, a "majority of the sentencing panel" determined that such adjustment was "entitled to little weight." As to the third circumstance, the sentencing panel was "unable to accord . . . significant weight" to evidence of the likelihood of lawful future behavior. As to the fourth circumstance, the sentencing panel found that Anderson's and Hochstein's adjustment to institutional life "may or may not be compatible with rehabilitation" and thus accorded "little weight" to such circumstance.

Anderson additionally urged the following as nonstatutory mitigating circumstances pertinent to his case: (1) family responsibility and ties, (2) invasion of his constitutional and statutory rights resulting from private individuals tainting the prosecution, and (3) disparity in sentencing due to a coconspirator being granted total immunity from prosecution. The sentencing panel accorded no weight to the first circumstance, found that the second did not constitute a mitigating factor, and accorded "little weight" to the third.

Hochstein additionally urged the following as nonstatutory mitigating circumstances pertinent to his case: (1) his emotional and intellectual immaturity at the time of the murder and (2) his history of being easily influenced or led. The panel accorded no weight to either of these circumstances.

The sentencing order stated that in determining the sentences, the panel unanimously determined that the statutory aggravating circumstance regarding murder for hire was applicable beyond a reasonable doubt in each case. The order further stated that the sentencing panel unanimously found that the statutory mitigating circumstance regarding lack of prior criminal activity was applicable in each case. The order states, however, that "a majority of the panel" rather than a unanimous panel, determined that such statutory mitigating circumstance, "even when coupled with the non-statutory mitigating evidence which the Defendant[s] [have] presented for consideration, are not of sufficient weight to approach or exceed the weight which has been given to the aggravating circumstance." The same majority of the panel determined that the sentence of death should be imposed upon each defendant. The same majority of the panel further determined that the sentence of death imposed in each

case was not excessive or disproportionate to the penalty imposed in similar cases.

In each case, one member of the panel dissented from the result of the majority and determined that a life sentence should be imposed with the following explanation:

> I respectfully dissent from the sentence imposed by the majority. The premeditated, calculated, contract murder of Ronald J. Abboud was an outrage against the State of Nebraska, and the victim's family and friends. However, an analysis of the aggravating and mitigating circumstances set forth in Neb. Rev. Stat. §29-2523 and §29-2521 [Reissue 1995] causes me to conclude that the mitigating circumstances approach or exceed the weight given to the aggravating circumstance in this case, and that a sentence of life imprisonment should be imposed.

Although the sentencing panel did not vote unanimously for imposition of the death penalty, the district court ordered that the penalty of death be imposed on each defendant. Anderson and Hochstein now appeal the November 5, 1999, orders of the district court for Douglas County imposing the death sentence on each of them based on a nonunanimous vote of the three-judge sentencing panel.

## ASSIGNMENTS OF ERROR

Anderson and Hochstein assert, renumbered and restated, that the district court erred in imposing the death penalty rather than sentences of life imprisonment where the panel failed to unanimously conclude that death sentences should be imposed. Anderson and Hochstein also assert that the sentencing panel erred in (1) failing to find that the statutory and nonstatutory mitigating circumstances approached or exceeded the statutory aggravating circumstance, (2) failing to give adequate weight to nonstatutory mitigating circumstances, (3) failing to submit to a jury the determination of the existence of an aggravating circumstance, (4) failing to apply a reasonable doubt standard to the sentencing determination; and (5) failing to conduct a meaningful comparative review. Anderson and Hochstein further assert that the district court erred in (1) failing to sustain motions for new trial on the basis that the original trial court failed to instruct

the jury on lesser-included forms of homicide and that trial counsel and direct appeal counsel provided ineffective assistance by failing to pursue such issue at trial and on direct appeal; (2) failing to sustain motions (a) to prohibit imposition of the death penalty, (b) to declare the Nebraska death penalty statutes unconstitutional, (c) for determinations of death eligibility, (d) for arrest of judgment, and (e) to reopen motion for new trial filed in 1978; (3) failing to find death by electrocution to be cruel and unusual punishment; and (4) failing to find their length of time spent on death row to be cruel and unusual punishment.

## STANDARD OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001).

## ANALYSIS

### SENTENCING ASSIGNMENT OF ERROR: IMPROPER IMPOSITION OF DEATH PENALTY BASED ON NONUNANIMOUS DETERMINATION OF SENTENCING PANEL

Nebraska statutes contain a section entitled "Special Procedure in Cases of Homicide," §§ 29-2519 through 29-2546, which provides, inter alia, procedures for imposition of the death penalty. Section 29-2520 provides that when a defendant is convicted of first degree murder,

the district court shall within seven days fix a date for hearing on determination of the sentence to be imposed. Such determination shall be made by: (1) The judge who presided at the trial or who accepted the plea of guilty; (2) a panel of three judges including the judge who presided or accepted the plea, the two additional judges having been designated by the Chief Justice of the Supreme Court after receiving a request therefor from the presiding judge; or (3) a panel of three district judges named by the Chief Justice of the Supreme Court when such Chief Justice has determined that the presiding judge is disabled or disqualified after receiving a suggestion of such disability or disqualification from the clerk of the court in which the finding of guilty was entered.

In the instant case, following remand to the district court for Douglas County in accordance with the 1997 federal mandate, a three-judge panel was appointed to determine whether the death penalty should be imposed on Anderson and Hochstein. See § 29-2520(3). Two of the three judges on the sentencing panel determined that the death penalty should be imposed in each case. The third judge, however, disagreed in each case, based upon his determination that "the mitigating circumstances approach or exceed the weight given to the aggravating circumstance." Although the three-judge panel did not vote unanimously for the death penalty, the district court imposed a sentence of death on each defendant on November 5, 1999.

Nebraska statutes provide no explicit provision regarding what number of a three-judge sentencing panel is necessary for a sentence of death to be properly imposed. The question presented in the instant cases is whether the three-judge sentencing panel convened pursuant to § 29-2520(3) must vote unanimously to impose a sentence of death under the statutes as currently enacted. If a unanimous vote is required, then we must determine the effect of the failure of the sentencing panel to reach unanimity upon the death sentences ordered in these cases.

Anderson and Hochstein contend that the panel's determination must be unanimous before the death penalty can be imposed. The State contends, inter alia, that because one judge can impose the death penalty under § 29-2520(1), it follows that the vote of two judges is adequate to impose the death penalty under the provision calling for a three-judge panel under § 29-2520(3).

A statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998); *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996). In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000); *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995). Because § 29-2520(3) fails to address the issue of what number of a three-judge panel must determine that the death penalty is to be imposed for a sentence of death to be properly imposed, the

statute is open for construction. In this regard, we note that we have previously construed the sentencing statutes in homicide cases where silent, and such construction has not evoked a change by the Legislature. See *State v. Simants*, 197 Neb. 549, 560, 250 N.W.2d 881, 888 (1977) (holding that where § 29-2522 is silent regarding burden of proof, "[w]e believe it is the intent of the act to require the facts upon which the aggravating circumstances . . . are based to be proved beyond a reasonable doubt, and so construe it"), *overruled on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990). See, also, *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000) (when judicial interpretation of statute has not evoked legislative amendment, it is presumed that Legislature has acquiesced in court's interpretation).

 It is a fundamental principle of statutory construction that penal statutes are to be strictly construed in favor of the defendant. See, *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999). A penal statute is given a strict construction which is sensible and prevents injustice or an absurd consequence. *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997); *State v. Sundling*, 248 Neb. 732, 538 N.W.2d 749 (1995). Penal statutes are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001); *State v. Bottolfson, supra.* Under principles of statutory construction, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *State v. Seberger*, 257 Neb. 747, 601 N.W.2d 229 (1999).

The intent of the Legislature with respect to imposition of the death penalty can be discerned in part by considering § 29-2521.01, which is contained in the "Special Procedure in Cases of Homicide," and in which the Legislature has provided in relevant part:

> (1) Life is the most valuable possession of a human being, and before taking it, the state should apply and follow the most scrupulous standards of fairness and uniformity;

(2) The death penalty, because of its enormity and finality, should never be imposed arbitrarily nor as a result of local prejudice or public hysteria.

This stated legislative policy is consistent with the views expressed by the U.S. Supreme Court and this court regarding the need for reliability in capital sentencing determinations. The U.S. Supreme Court has stated:

[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). See, also, *State v. Simants, supra.* It has also been said that "because of its severity and irrevocability, the death penalty is qualitatively different from any other punishment, and hence must be accompanied by unique safeguards to ensure that it is a justified response to a given offense." *Spaziano v. Florida*, 468 U.S. 447, 468, 104 S. Ct. 3154, 82 L. Ed. 2d 340 (1984) (Stevens, J., concurring in part, and in part dissenting).

We have recently stated that " 'the death sentence is different from any other criminal penalty. . . . No system based on human judgment is infallible. Thus, with the death penalty, we have taken, and should continue to take, the extra step—indeed walk the extra mile—to ensure fairness and accuracy' " in cases involving the death penalty. *State v. Reeves*, 258 Neb. 511, 534, 604 N.W.2d 151, 167 (2000) (quoting *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993)).

█ Because § 29-2520(3) does not state what number of votes of the three-judge sentencing panel is required to properly impose the death penalty, we read the statutes in the "Special Procedure in Cases of Homicide" section together and construe them conjunctively to determine the intent of the Legislature with respect to § 29-2520(3) so that different provisions of the statutes are consistent, harmonious, and sensible. *State v. Seberger, supra.* In this regard, we are especially cognizant of the language used by the Legislature in § 29-2521.01 evincing

legislative intent, which in relevant part acknowledges the "enormity" of the death penalty and provides that in imposing the death penalty, "the most scrupulous standards of fairness" should be followed. We are also mindful that a penal statute should be strictly construed in favor of the defendant, see *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999), and that the U.S. Supreme Court has recognized that the death penalty is qualitatively different from imprisonment. Applying these principles of statutory construction and given the stated intent of the Legislature, we conclude that a three-judge panel designated under § 29-2520(3) must vote unanimously for a sentence of death before the death penalty can be properly imposed.

There is a substantial basis in Nebraska jurisprudence and elsewhere for requiring unanimity in criminal cases. In this regard, we note that with respect to a trial to determine guilt or innocence, in Nebraska, a jury must be unanimous in order to convict a criminal defendant. See Neb. Const. art. I, § 6 (providing that "right of trial by jury shall remain inviolate" and allowing Legislature to provide for nonunanimous verdicts only in civil cases). See, also, *State v. Parker*, 221 Neb. 570, 571, 379 N.W.2d 259, 260 (1986) ("before one may be convicted of violating a state statute, the jury must reach a unanimous verdict"). We have also stated that for double jeopardy purposes, capital sentencing hearings in Nebraska have been held to have characteristics which resemble a criminal trial. *State v. Palmer*, 257 Neb. 702, 600 N.W.2d 756 (1999) (citing *State v. Rust*, 247 Neb. 503, 528 N.W.2d 320 (1995)).

The requirement of unanimous jury verdicts in criminal cases exists in virtually every American jurisdiction, and those states that do allow a nonunanimous verdict in some criminal cases nevertheless require unanimity in capital cases. See Richard H. Menard, Jr., Note, *Ten Reasonable Men*, 38 Am. Crim. L. Rev. 179 (2001) (acknowledging unanimity voting rule governing petit juries in almost all American jurisdictions and noting that exceptions, Louisiana and Oregon, nevertheless require unanimity in capital or first degree murder cases). See, also, Jere W. Morehead, *A "Modest" Proposal for Jury Reform: The Elimination of Required Unanimous Jury Verdicts*, 46 U. Kan. L. Rev. 933, 935

(1998) (acknowledging "near-universal requirement that a jury reach a unanimous verdict" in criminal cases and noting proposal in California that would eliminate unanimity in criminal cases *except death penalty cases*). The fact that even those jurisdictions that have eliminated or have proposed eliminating a requirement of unanimity in reaching some criminal convictions nevertheless require unanimity in capital cases reflects the understanding that such cases are qualitatively different and require an added measure of reliability. See *Woodson v. North Carolina*, 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). See, also, *Spaziano v. Florida*, 468 U.S. 447, 104 S. Ct. 3154, 82 L. Ed. 2d 340 (1984) (Stevens, J., concurring in part, and in part dissenting); *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000); *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *overruled on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 539 (1990).

We also note that in most jurisdictions, capital sentencing is a jury function, and most relevant statutes prescribe that the failure of a jury to reach a unanimous agreement regarding sentencing results in the imposition of a life sentence by default. See, generally, James R. Acker and Charles S. Lanier, *Law, Discretion, and the Capital Jury: Death Penalty Statutes and Proposals for Reform*, 32 Crim. L. Bull. 134 (1996). See, also, *Jones v. United States*, 527 U.S. 373, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999) (Ginsburg, J., dissenting); *State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995); *State v. Daniels*, 207 Conn. 374, 542 A.2d 306 (1988) (emphasizing need for reliability as basis for requiring unanimity on capital sentencing juries), *habeas corpus granted on other grounds, Daniels v. Bronson*, 736 F. Supp. 1215 (D. Conn. 1990).

Our conclusion that unanimity is required of a three-judge panel before the death penalty can be properly imposed is consistent with the statutory schemes established in the other jurisdictions which provide for three-judge sentencing panels. At least three states other than Nebraska provide for three-judge sentencing panels: Colorado, Nevada, and Ohio. All three require by statute that the sentence of death be based on the unanimous determination of the three-judge panel. See, Colo. Rev. Stat. Ann. § 16-11-103(2)(d) (West Cum. Supp. 2000) (if panel of judges cannot unanimously agree on sentence, it shall make

record of each judge's position and shall then sentence defendant to life imprisonment); Nev. Rev. Stat. § 175.556 (2000) (sentence of death may be given only by unanimous vote of three judges); Ohio Rev. Code Ann. § 2929.03(D)(3) (Anderson 1999) (if panel of three judges unanimously finds, by proof beyond reasonable doubt, that aggravating circumstances outweigh mitigating factors, it shall impose sentence of death). Although Nebraska's statute does not specify what number of votes of the panel is required to properly impose the death penalty, we are inclined to believe that the same public policy goals as were expressed by the Nebraska Legislature in § 29-2521.01(1) and (2) would have been shared by the legislatures of Colorado, Nevada, and Ohio when those states enacted their three-judge sentencing panel death penalty statutes which explicitly require unanimity. Those statutes suggest that unanimity of the panel is necessary to effectuate the intent of the death penalty sentencing statutes that capital punishment be imposed fairly and reliably.

Having concluded that the imposition of the death penalty was error in each of these cases, we must determine the effect that such error has on the sentences of Anderson and Hochstein. Section 28-303 provides that murder in the first degree is punishable only as either a Class I or a Class IA felony. Section 28-105 provides that the penalty for a Class I felony is death and that the penalty for a Class IA felony is life imprisonment. Thus, the only sentences available in a case of murder in the first degree are the death penalty or life imprisonment.

As we have previously stated in a first degree murder case, "the sentencer is not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather . . . the sentencer is required to choose between the above-mentioned two options [life sentence or the death penalty] and only those options." *State v. Rust,* 247 Neb. 503, 513, 528 N.W.2d 320, 327 (1995). We have also held that the imposition of a life sentence acts to acquit the defendant of the death penalty. *State v. Rust, supra.* See, also, *State v. Seberger,* 257 Neb. 747, 601 N.W.2d 229 (1999).

In the instant cases, the objective of the hearing before the three-judge panel was "to reach a determination of whether the death penalty should be imposed." *State v. Seberger,* 257 Neb. at

750, 601 N.W.2d at 231. Because the three-judge panel did not vote to unanimously impose the death penalty, Anderson and Hochstein were acquitted of the death penalty. See, generally, *State v. Rust, supra.* The district court erred as a matter of law in each case by entering judgments sentencing Anderson and Hochstein to death which were inconsistent with the determinations of the three-judge panel acquitting Anderson and Hochstein of the death penalty. Given the sentencing panel's acquittal of Anderson and Hochstein as to the death penalty, by operation of law, a sentence of life imprisonment should have been imposed on Anderson and Hochstein by the district court.

█ Where the defendants have been convicted of murder in the first degree pursuant to § 28-401 (now found at § 28-303), the only alternative to sentences of death are sentences of life imprisonment. See § 28-105. Where the defendant has been convicted of first degree murder and where the district court erroneously imposed a death sentence, the appellate remedy for an incorrectly imposed death sentence based on a nonunanimous vote of the sentencing panel is, by operation of law, the vacation of the death sentence imposed on the defendant, thereby resulting in imposition of a sentence of life imprisonment. Accordingly, we vacate the sentences of death in these cases, reverse in part the judgments, and remand the causes to the district court with directions to resentence Anderson and Hochstein to life imprisonment. See §§ 28-303, 28-105, and 29-2522.

### NONSENTENCING ASSIGNMENTS OF ERROR

█ The majority of Anderson's and Hochstein's remaining assignments of error relate to the manner of the imposition of the death penalty. Having vacated the sentences of death and determined that Anderson and Hochstein are to be sentenced by the district court to life imprisonment, we need not consider further assignments of error relating to imposition of the death penalty. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *State v. Kula,* 260 Neb. 183, 616 N.W.2d 313 (2000); *State v. Graham,* 259 Neb. 966, 614 N.W.2d 266 (2000).

In addition to their assignments of error relating to imposition of the death penalty, Anderson and Hochstein make certain

assignments of error relating to the validity of their original convictions. Such assignments of error, including a claim that the district court erred in denying their motions for new trial, are based on their claim that the original trial court erred by failing to instruct the jury on the lesser-included forms of homicide. In its order of November 5, 1999, the district court denied various motions including the motions for new trial. The district court in these cases stated several reasons for such denial, including that neither the sentencing panel nor the presiding judge had authority to grant the relief sought, including a new trial.

We agree with the district court's conclusion that in the instant proceedings, it was without authority to order the non-sentencing relief sought by Anderson and Hochstein. The resentencing in the instant cases was the result of Anderson's and Hochstein's petitions for habeas corpus relief in the federal courts. The U.S. District Court and the Court of Appeals for the Eighth Circuit concluded that error existed in Anderson's and Hochstein's sentencing because an invalid aggravating circumstance had been considered. The federal courts therefore ordered specific relief limited to and designed to remedy such sentencing error. The U.S. District Court in its memorandum opinions noted that the error in sentencing did not require a retrial, and in 1997, the Court of Appeals for the Eighth Circuit, in affirming, limited the relief granted to the orders that the sentences be reduced to life imprisonment unless this court took one of three actions: (1) reweighed the aggravating and mitigating circumstances, (2) conducted independent harmless error reviews, or (3) remanded the causes to the sentencing court for resentencing. Upon the State's motion, this court entered an order remanding the causes to the district court for resentencing.

When a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate. The order of the appellate court is conclusive on the parties, and no judgment or order different from, or in addition to, that directed by the appellate court can be entered by the trial court. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998); *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997); *Xerox Corp. v. Karnes*, 221 Neb. 691, 380 N.W.2d 277 (1986).

The district court's authority in these cases was limited by the remand from this court, and this court's authority was in turn limited by the relief granted by the federal courts. Such relief was limited to the sentencing aspect of the cases and did not provide an avenue for Anderson and Hochstein to move for a new trial or seek nonsentencing relief. We therefore conclude that due to the limited nature of the relief granted by the federal courts and this court, upon remand, the district court in these cases was without authority to grant the motions for new trial or other nonsentencing-related relief. The district court properly denied such motions, and we affirm this order.

## CONCLUSION

Anderson and Hochstein were each convicted of first degree murder. Pursuant to the 1997 mandate of the Court of Appeals for the Eighth Circuit, three-judge sentencing panels were designated pursuant to § 29-2520(3). In each case, the sentencing panel did not vote unanimously to impose the death penalty: two judges determined that the death penalty should be imposed, and one judge voted against imposition of the death penalty. Notwithstanding the fact that the three-judge sentencing panel did not vote unanimously for imposition of the death penalty, on November 5, 1999, the district court imposed a sentence of death rather than a sentence of life imprisonment in each case. The issue of the propriety of the imposition of the death penalty based on a nonunanimous vote of the sentencing panel thus arose for the first time in these cases in 1999. Given the provisions of the "Special Procedure in Cases of Homicide," §§ 29-2519 through 29-2546, for the reasons outlined above, we conclude that the impositions of sentences of death based on nonunanimous determinations of the three-judge sentencing panels designated under § 29-2520(3) were error.

The Legislature has provided for a "Special Procedure in Cases of Homicide." §§ 29-2519 through 29-2546. Section 29-2521.01 therein acknowledges the "enormity and finality" of the death penalty, § 29-2521.01(2), and provides that "[l]ife is the most valuable possession of a human being, and before taking it, the state should apply and follow the most scrupulous standards of fairness and uniformity," § 29-2521.01(1). Although § 29-2520(3)

provides for the designation of three-judge sentencing panels to determine whether the death penalty should be imposed, it is silent as to whether unanimity is required or whether two votes are sufficient to properly impose the death penalty.

At the trial level, unanimity in criminal cases in the guilt phase is the rule in Nebraska and elsewhere. Unanimity in capital sentencing is the rule elsewhere. Our review of the law in other jurisdictions shows that other state statutes which provide for three-judge sentencing panels require unanimity in the imposition of the death penalty. The U.S. Supreme Court has observed that the penalty of death is qualitatively different from a sentence of imprisonment and that its imposition must be accompanied by unique safeguards.

Given the legislatively recognized "enormity and finality" of the death penalty, § 29-2521.01(2), and the legislative directive to apply "scrupulous standards of fairness" in imposing sentences of death, § 29-2521.01(1), we decline to endorse sentences of death based on speculation that the Legislature, which has not specified what number of votes is required of a three-judge sentencing panel, would find a nonunanimous vote of a three-judge sentencing panel sufficient to impose the death penalty. We therefore hold that a three-judge panel designated under § 29-2520(3) must vote unanimously for a sentence of death before the death penalty can be properly imposed.

A conviction for murder in the first degree is punishable by either a life sentence or the death penalty. §§ 28-303, 28-105, and 29-2522. The office of a three-judge sentencing panel designated under § 29-2520(3) is to determine whether the death penalty should be imposed. The nonunanimous determinations of the three-judge panel acquitted Anderson and Hochstein of the death penalty. Where, as here, the defendants have been acquitted of the death penalty by the determinations of the three-judge panel, sentences of life imprisonment will be imposed by operation of law. The sentences of death imposed by the district court were error as a matter of law. Accordingly, the sentence of death imposed on Hochstein in case No. S-99-1344 and the sentence of death imposed on Anderson in case No. S-99-1345 are each vacated, the judgments are reversed, and the causes are remanded to the district court with directions to impose sentences of life

imprisonment in each case. In all other respects, the orders of the district court appealed from are affirmed.

SENTENCES VACATED, JUDGMENTS AFFIRMED IN PART AND IN PART REVERSED, AND CAUSES REMANDED WITH DIRECTIONS.

STEPHAN, J., not participating.